UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KEVIN BRYANT,

                Plaintiff,

  -against-

DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION
("DOCCS"), ACTING COMMISSIONER
ANTHONY ANNUCCI, in his official capacity,
CHIEF MEDICAL OFFICER CARL
KOENIGSMANN, in his official capacity

                Defendants.

CIVIL CASE NO. 6:18-cv-06170-CCR

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

DISABILITY RIGHTS NEW YORK
Megan Williams, Esq.
Jessica Barlow, Esq.
Simeon Goldman, Esq.
725 Broadway, Suite 450
Albany, NY  12207
(518) 432-7861
Attorneys for Plaintiffs

# Table of Contents

Preliminary Statement .................................................................................................................. 1

Facts ............................................................................................................................................ 1

Argument .................................................................................................................................... 3

   I.    Plaintiff has Shown Irreparable Harm ................................................................................ 3

   II.   Plaintiff Has Shown a Likelihood of Success on the Merits ............................................. 4

      A.   Defendants' Transfer of Plaintiff was an Act of Retaliation in Violation of the First Amendment and the ADA ................................................................................................ 4

      B.   Defendants' Transfer of Plaintiff Showed and Continues to Show Deliberate Indifference to Plaintiff's Medical Needs in Violation of his Eighth Amendment Rights ..... 7

         1.   Defendants were Deliberately Indifferent to Plaintiff's Medical Needs When They Transferred him Out of the RMU ........................................................................................ 7

         2.   Defendants' Failure to Transfer Plaintiff Back to the RMU Evidences Ongoing Deliberate Indifference to Plaintiff's Medical Needs ......................................................... 7

Conclusion ................................................................................................................................ 10

**Table of Authorities**

**Cases**

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) ......................................................... 8

*Clarkson v. Coughlin*, 898 F. Supp. 1019 (S.D.N.Y. 1995) ............................................ 9

*Dean v. Coughlin*, 804 F.2d 207 (2d Cir.1986) ................................................................ 8

*Estelle v. Gamble*, 429 U.S. 97 (1976) ............................................................................. 9

*Farmer v. Brennan*, 511 U.S. 825 (1994) ........................................................................ 9

*Galusha v. New York State Dep't of Envtl. Conservation*, 27 F. Supp. 2d 117 (N.D.N.Y. 1998).. 4

*Hathaway v. Coughlin*, 99 F.3d 550 (2d Cir. 1996) ........................................................ 9

*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010) .................................................................. 4

*Hohman v. Hogan*, 597 F.2d 490 (2d Cir.1979) .............................................................. 6

*Liscio v. Warren*, 901 F.2d 274 (2d Cir.1990) ................................................................. 9

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) ............................................................... 3

*Meriwether v. Coughlin*, 879 F.2d 1037 (2d Cir. 1989) .................................................. 6

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ......................................................................... 3

**Other Authorities**

*Medicare Benefit Policy Manual* ..................................................................................... 6

**Preliminary Statement**

This action and Plaintiff's motion for a preliminary injunction seek to remedy Defendants' violation of Plaintiff's rights as afforded by the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the First Amendment ("First Amendment") and the Eighth Amendment of the United States Constitution ("Eighth Amendment"). This memorandum is submitted in reply to Defendants' memorandum of law in opposition to Plaintiff's motion for a preliminary injunction to transfer Plaintiff back to a Regional Medical Unit ("RMU") immediately.

**Facts**

While the facts provided by Defendants are not inaccurate, they paint a woefully incomplete picture of the situation. Defendants fail to mention that Plaintiff was initially denied access to the law library at Wende's RMU "as per medical limitations," as was fully explained by Defendants' counsel, Nancy Heywood, on January 30, 2017, via email:

> Inmate has multiple serious medical problems.  He has a Left hemiparesis requiring cane use for short distance ambulation and wheelchair use for longer distance mobility.  He has congenital heart disease with atrial fibrillation and requires an anticoagulation.  He has had multiple serious bleeds, secondary to his anti-coagulation into his retroperitoneum, Lt psoas muscle and most recently a bleed with minimal trauma into his right forearm-which developed into a compartment syndrome needing emergency evacuation.  This procedure left his forearm with a 6cmx6cm open wound which took 7 months of treatment in the Wound Clinic at ECMC and daily meticulous nursing care to heal.  He also has a seizure disorder.  He is treated with anti-epileptic medications; however, he still has 1-2 seizures per year which have occurred while he attended activities, such as religious services in the RMU, requiring nursing staff to emergently attend to his medical needs.  He has to wear a helmet outside of his room to protect his head from trauma during a seizure, due to his need for an anticoagulation. Trauma to his head, even with the helmet, could result in a disastrous bleed into his brain with horrible consequences to his already impaired functional status. Attending a program outside the RMU, puts this inmate at significant risk, given that lack of nursing/medical staff. Sending medical/nursing staff with the inmate to the law library or other program would render them unable to perform other

1

> duties and would create a staffing shortage in the RMU for the hours that they are away. This places an undue burden on the Department.

Williams Aff. ¶ 11, Exhibit D. Defendants present no facts stating Plaintiff's condition has changed since this email.

Defendants also fail to acknowledge that since his arrival at Five Points Correctional Facility ("Five Points") on July, 7, 2017, Plaintiff has required transport to an outside hospital on three separate occasions. In October, 2017, Plaintiff was brought to Cayuga Medical Center ("CMC") after he had fallen in his cell on two occasions. Dkt. 1 ¶126. At CMC, Plaintiff was diagnosed with three broken ribs. *Id*.; Dkt. 5-3, Williams Aff. Exhibit R.

Although Defendants briefly describe the function of an RMU, they fail to note the massive differences in the level of medical care Plaintiff was receiving at the RMU compared to the medical care he is currently receiving at Five Points. As outlined in the complaint, as well as in Plaintiff's Memorandum of Law in Support of Preliminary Injunction, the RMU provided Plaintiff with the 24 hour care that his medical conditions require. Dkt. 1 ¶ 53-78; Dkt 5-2 p. 3. Importantly, Defendants fail to acknowledge that Plaintiff was able to be seen in a timely fashion for emergent medical issues while at the RMU, Dkt. 1 ¶ 69, but now has to use the lengthier "sick call" or emergency "sick call" procedure. *Id.* ¶¶ 94-102. As highlighted by Plaintiff's February 1, 2018, experience, even emergency "sick call" means a significant delay (in that instance 30 minutes) before Plaintiff can be seen by a medical professional. Dkt. 1 ¶¶ 137-140. As Defendants stated, due to Plaintiff's seizure disorder he needs to be in a setting where nursing staff can "emergently attend to his medical needs." Dkt. 5-3, Williams Aff. Exhibit E.

While Defendants' recitation of facts is certainly sparse, most notably missing is any assertion by Defendants that demonstrates that Plaintiff experienced an improvement in his medical conditions between the time he was prohibited from leaving the RMU for even a few

hours, to the time he was transferred to general population full time, a period of less than 6 months. For 12 years before his transfer to general population at Five Points, Plaintiff was housed by Defendants in the RMU because he was not "medically stable" enough to be housed elsewhere. Dkt 1 ¶ 17. Plaintiff's medical conditions made no notable improvement prior to his transfer to general population, and Defendants do not allege otherwise. What's more, Plaintiff's current placement in general population results in a near constant needs for emergency care due to the lack of daily care. Dkt. 1 ¶¶ 126, 132.

## Argument

### I.   Plaintiff has Shown Irreparable Harm

"It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)). As both Plaintiff's Complaint and Memorandum of Law in Support of a Motion for Preliminary Injunction state, not only has Plaintiff sustained a direct injury, he is in immediate danger of sustaining additional direct injuries while he is housed in general population. Plaintiff sustained direct injury when he fell multiple times in his cell and broke three ribs. Dkt. 1 ¶ 126; Dkt. 5-3, Williams Aff. Exhibit R.

Plaintiff remains in danger of sustaining additional injury every day he remains at Five Points and not in an RMU. Plaintiff is at risk of injury from another fall or collision that causes dangerous bruising, from not receiving emergency care when experiencing a seizure, and from a worsening in his condition because he is not being monitored closely by medical staff as his conditions require. Dkt. 5-3, Williams Aff. Exhibit L. In addition, should Plaintiff find himself in an altercation with another inmate, his medical conditions increase the risk that he would be severely injured or killed. Plaintiff is a vulnerable target, and "[t]rauma to [Plaintiff's] head, even

with the helmet, could result in a disastrous bleed into his brain with horrible consequences to his already impaired functional status." Dkt. 5-3 Williams Aff. Exhibit E.

The harm Plaintiff has already experienced, and the continued danger is not "remote or speculative," and is "actual and imminent." *Galusha v. New York State Dep't of Envtl. Conservation*, 27 F. Supp. 2d 117, 122 (N.D.N.Y. 1998). Plaintiff has established that he has and will continue to suffer direct, actual harm if he is not transferred back to an RMU.

## II.     Plaintiff Has Shown a Likelihood of Success on the Merits

Plaintiff has shown that his transfer to general population was in retaliation for engaging in protected activity under the First Amendment and the ADA, and that with the transfer Defendants showed deliberate indifference to Plaintiff's medical needs, and continue to show such deliberate indifference to this day in violation of the Eighth Amendment. While Defendants attempt to characterize Plaintiff's claims as a simple disagreement about where he should be housed and where he should receive his medical care, Plaintiff's claims center on an act of blatant retaliation which placed Plaintiff in considerable and continual danger of a medical catastrophe. The transfer of Plaintiff was an act of retaliation in violation of the First Amendment and the ADA, which resulted in Defendants violating and continuing to violate Plaintiff's Eighth Amendment rights by failing to provide him with necessary medical care.

### A.  Defendants' Transfer of Plaintiff was an Act of Retaliation in Violation of the First Amendment and the ADA

Since August, 2015, Plaintiff has been engaged in protected activity under both Title V of the ADA and the First Amendment. In that same time, there has been no notable improvement in Plaintiff's health. As Defendants note, once Plaintiff establishes the temporal proximity[1] from

---

[1] As Defendants implicitly accept Plaintiff's arguments establishing temporal proximity by not challenging them, Plaintiff will not further elaborate on that element.

4

the event to the alleged retaliation, the burden shifts to them to show that there were legitimate, non-retaliatory reasons for the transfer. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).

Defendants transferred Plaintiff from the RMU where he had been housed for 12 years to a general population prison. Defendants describe RMUs as "an inpatient medical unit designed to provide sub-acute and long-term care for inmates whose health needs require longer care than provided in facility infirmaries, yet do not warrant admission or continued stay in a community based hospital." Dkt. 12-1 ¶ 6. Plaintiff's RMU Discharge Summary notes his "Admission Diagnosis," including at least seven different conditions. Dkt. 12-1, Exhibit A. The Discharge Summary also specifies Plaintiff's "Discharge Diagnosis," stating that Plaintiff's condition is the "same" as it was upon his admission, plus at least eight additional medical issues. *Id*. An examination of the documentation provided by Defendants reveals that Plaintiff's chronic conditions have not miraculously disappeared or been cured, and in fact Plaintiff's medical needs have increased since his admission to the RMU. Dkt. 12-1 Exhibit A. While Defendants state that Plaintiff's transfer was "based on medical reasons and not done to retaliate," they fail to actually state what those medical reasons are, or provide even a vague explanation of how Plaintiff's condition has improved to warrant his transfer to general population. Defendants provide a three-page report that speaks to Plaintiff's general improvement in some areas since 2005, but this report lacks any statements which justify Plaintiff's transfer in July 2017, as there was no notable improvement in his conditions prior to that time. Dkt. 12-1.

Defendants cite to Plaintiff's ability to travel to the law library and religious services as evidence that Plaintiff could live outside of the "nursing home" setting of the RMU. Dkt. 12, p. 5. When Plaintiff left the RMU for religious services or to visit the law library, he was within the same correctional facility as the RMU and was not on his own. The ability to take short trips

outside of a nursing home setting is not evidence that Plaintiff does not still require nursing home level care for the majority of the time. As Defendants' analogize the RMUs to nursing homes, it is helpful to look to how nursing homes manage residents who travel outside of the facility for limited periods of time. According to the Medicare Benefit Policy Manual, "the fact that a patient is granted an outside pass or short leave of absence for the purpose of attending a special religious service, holiday meal, family occasion, going on a car ride, or for a trial visit home, is not, by itself evidence that the individual no longer needs to be in a [skilled nursing facility] for the receipt of required skilled care." *Medicare Benefit Policy Manual*, Medicare Reg. and Guidance Rev. 228 (2016), https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/bp102c08.pdf. Just as a nursing home resident taking a trip to a religious service is not evidence that they no longer need nursing home care, the fact that Plaintiff traveled outside of the RMU is not sufficient to demonstrate that he is safely able to live outside of an RMU.

By Defendants own statements, in January, 2017, "[a]ttending a program outside the RMU, puts [Plaintiff] at significant risk, given that lack of nursing/medical staff." Dkt. 5-3, Williams Aff. Exhibit D, but by July, 2017, Plaintiff was deemed well enough to live full-time in general population when his conditions had not changed or improved. Defendants offer no facts to support that Plaintiff's medical condition improved because it did not change. He did need, and continues to need, the treatment and supports of the RMU. The change that triggered Plaintiff's transfer was his engagement in protected activity which culminated in his successful challenge of Defendants' policy barring him from the law library in April, 2017.

Plaintiff does not dispute that Defendants have broad authority to transfer inmates between facilities. That said, "[t]hey may not, however, transfer them solely in retaliation for the exercise of constitutional rights." *Meriwether v. Coughlin*, 879 F.2d 1037, 1045–46 (2d Cir.

6

1989); *see also Hohman v. Hogan*, 597 F.2d 490, 492–93 (2d Cir.1979). Defendants have failed to provide any facts to support the assertion that Plaintiff's transfer to general population was based on anything but retaliation for his engagement in protected activities. Plaintiff has shown a likelihood of success on the merits of his First Amendment and ADA retaliation claims.

### B. Defendants' Transfer of Plaintiff Showed and Continues to Show Deliberate Indifference to Plaintiff's Medical Needs in Violation of his Eighth Amendment Rights

#### 1. Defendants were Deliberately Indifferent to Plaintiff's Medical Needs When They Transferred him Out of the RMU

In choosing to transfer Plaintiff, Defendants were deliberately indifferent to Plaintiff's medical needs. This was not mere negligence. Defendants have created a paper trail showing that they were aware of Plaintiff's medical needs, and, in fact, used those needs to deny him access to the law library for even a few hours. Despite claiming that Plaintiff was too medically unstable to travel to the law library because "[a]ttending a program outside the RMU, puts this inmate at significant risk, given that lack of nursing/medical staff," Defendants transferred Plaintiff to general population. Dkt. 5-3, Williams Aff. Exhibit D. Defendants were well aware of Plaintiff's significant medical needs, needs that by their own statements warrant RMU level care, but transferred Plaintiff to a general population facility anyway. Plaintiff has established that Defendants were deliberately indifferent to his medical needs when they transferred him out of the RMU to general population.

#### 2. Defendants' Failure to Transfer Plaintiff Back to the RMU Evidences Ongoing Deliberate Indifference to Plaintiff's Medical Needs

Beyond their deliberate indifference at the time of Plaintiff's transfer, Defendants continue to show deliberate indifference to Plaintiff's medical needs every day he remains in general population. While Defendants attempt to characterize the issue before the court as one in

7

the past, the most emergent aspect of Plaintiff's claims is that he is currently at ongoing and substantial risk of injury or death due to Defendants deliberate indifference to his medical needs.

Defendants point to the well-established principle that a "mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* Plaintiff's treatment in general population is far from adequate. Plaintiff offers documentation provided *by the Defendants* about the proper treatment needed for his medical conditions. Defendants own RMU Health Order Sheet lists the myriad of health-related issues and needs of Plaintiff which make it categorically unsafe for Plaintiff to be housed in general population instead of an RMU. Dkt. 5-3, Williams Aff. Exhibit L. Plaintiff's complaint lists at length the medical attention that was ordered by Defendants through the RMU Health Order Sheet on June 23, 2017, *Id.*, and ceased to be provided as of his transfer on July 7, 2017. Plaintiff is not bringing to this Court a "mere disagreement" over the type of treatment he is being provided, but is arguing that his current treatment is not adequate. *Chance* 143 F.3d at 703. Plaintiff is only requesting this Court order his transfer to an RMU where he can receive the type of treatment *Defendants* ordered he needs. *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986) (The essential test is one of *medical necessity* and not one simply of desirability) (emphasis added).

While Defendants state that Plaintiff's "medical needs could be met through the standard medical care in general population," Dkt. 12-3, p. 2, a simple review of the plethora of medical incidents Plaintiff has experienced since living in general population shows this is simply not true. As stated above, Plaintiff has been taken to an outside medical facility three times since being transferred to Five Points general population, and does not have access to prompt medical

attention when he experiences a seizure or fall. Defendants seem to state that because they send Plaintiff to an outside hospital after he experiences a medical emergency that his care is adequate. Dkt. 12, p. 9; Dkt. 13, ¶¶ 16-17. However, if Plaintiff was receiving adequate daily medical care he would not need to be transferred to outside hospitals so frequently. Defendants own medical staff has recognized that Plaintiff's needs are beyond what can be met in general population, has recorded in Plaintiff's medical records that Five Points "may not be the appropriate facility for [him]." Dkt. 13, Exhibit A p. 32. Deliberate indifference results from "an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Defendants are aware of and have acknowledged Plaintiff's vast medical needs, have documented recognition that Five Points is not an appropriate facility for him, but have consciously disregarded the risk and failed to act.

It is well established that prison officials may be held liable if they are aware "that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Additionally, "[u]nder certain circumstances, delay or denial of inmates' access to medical care amounts to deliberate indifference." *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1042–43 (S.D.N.Y. 1995); see *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Liscio v. Warren*, 901 F.2d 274, 276–77 (2d Cir.1990) (failure to examine inmate going through "life-threatening" and "fast-degenerating" condition for three days could constitute deliberate indifference). Defendants are, as the sole medical provider for Plaintiff since 2004, aware of his multiple and serious medical conditions. Defendants are aware of each medical incident that Plaintiff has experienced since his transfer to general population. It was Defendants who determined that Plaintiff's appropriate placement, for

12 years, was in an RMU. Being housed at Five Points in general population means that Plaintiff is being denied adequate medical care that Defendants themselves stated he needs.

Defendants have taken no steps to abate these risks. Instead, Defendants assert that because Plaintiff is receiving *some* medical care, he is receiving the proper medical care. However, as discussed previously, Defendants provide no facts or evidence as to why the significantly lower level of care that Plaintiff is receiving at Five Points is suddenly an adequate amount of care, when it was deemed that he needed considerably more care from 2004-2017 for the same medical conditions. The deliberate lack of necessary medical care endangers Plaintiff's life on a daily basis, and clearly constitutes a violation of his Eighth Amendment rights.

## Conclusion

Returning Plaintiff to the Wende RMU for the duration of litigation restores the status quo prior to July 2017, and imposes no hardship on Defendants. If Plaintiff ultimately loses this case, there is no harm to Defendants. Leaving Plaintiff in general population subjects him to daily risk of more harm, and possibly death while this case is litigated. This would be abhorrent.

For all of the reasons above, we implore this Court to immediately order Plaintiff's return to the Wende RMU, so he can receive the medical care and supports that he had received for twelve years, and to which he is entitled.

Dated: April 5, 2018        Albany, New York

By:  /S/ Megan Williams
MEGAN WILLIAMS
JESSICA BARLOW
SIMEON GOLDMAN

DISABILITY RIGHTS NEW YORK
Attorneys for Plaintiffs
725 Broadway, Suite 450
Albany, NY  12207
Phone: 518-432-7861
Fax: 518-427-6561 (Not for service)